IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
LUFKIN DIVISION

| | | |
|---|---|---|
| VILMA MOLINA, | § | |
|      *Plaintiff*, | § | |
| | § | |
| v. | § | CIVIL ACTION NO.  9:21-CV-290-MJT-CLS |
| | § | |
| ETECH GLOBAL SERVICES LLC, ETECH | § | |
| INC., NACOGDOCHES, CENTER LLC, and | § | |
| MATTHEW ROCCO, | § | |
|      *Defendants*. | § | |

**REPORT AND RECOMMENDATION ON
DEFENDANTS' MOTION TO DISMISS (docs. #100, #117)**

Pursuant to 28 U.S.C. § 636 and the Local Rules of Court for the Assignment of Duties to United States Magistrate Judges, the district court referred this proceeding to the undersigned magistrate judge to conduct all pretrial proceedings, to enter findings of fact and recommend disposition on case-dispositive matters, and to determine non-dispositive matters.  28 U.S.C. § 636(b)(1); E.D. TEX. LOC. R. CV-72.

Before the court are Defendants' Motion to Dismiss (doc. #100) and Re-urged Motion to Dismiss (doc. #117) filed October 6, 2023, and October 24, 2023, respectively.  In their motion, Defendants seek an order dismissing the Plaintiff's case in its entirety due to discovery abuse.  On November 22, 2023, the undersigned ordered Plaintiff to respond to the Motions to Dismiss no later than December 15, 2023.  (Doc. #134.)  Five days past her deadline, Plaintiff filed her response.  (Doc. #137.)  Defendants filed a Reply on December 27, 2023 (doc. #139) and Plaintiff filed her Sur-Reply (labelled as an "opposition") on January 18, 2024, (doc. #142), more than 14 days past the 7-day deadline.  The sur-reply is not complete as it states that additional responses are forthcoming.  No further filings responsive to the motions to dismiss or Defendants' reply will be considered.  The Defendants' request for dismissal of Plaintiff's claims is now ripe for review.

## I.    Factual and Procedural Background

Given the nature of the relief requested, a detailed recitation of the factual and procedural background of this case is necessary.  Plaintiff filed suit on November 24, 2021, asserting claims of discrimination based on national origin and retaliation under Title VII and claims under 42 U.S.C. §1981a,[1] (doc. #1 at 3), against her former employer, Etech, and against Matthew Rocco, one of Etech's managers.  Summonses were issued to Plaintiff for service on January 21, 2022, and returns were filed on April 18, 2022.  On May 17, 2022, Defendants were granted an extension to file an answer on or before June 2, 2022.  (Doc. #9.)  Defendants filed a motion to dismiss under Rule 12(b)(6) on June 2, 2022.  (Doc. #12.)

Also on June 2, 2022, Plaintiff filed a motion requesting permission to electronically file case documents.  (Doc. #14).  This motion was granted on June 7, 2022.  (Doc. #16.)  On July 5, 2022, Plaintiff requested an extension of time to file her response to the motion to dismiss asserting she was having difficulty using and accessing CM/ECF.  (Doc. #18.)  The following day, Plaintiff filed her response.  (Doc. #19.)  The court granted Plaintiff's motion for an extension and deemed her response (doc. #19) timely filed.

The court issued its Order Setting Rule 16 Management Conference and scheduled the conference for November 15, 2022.  The Order required the parties to complete their required initial mandatory disclosures by October 31, 2022, and file a joint Rule 26(f) report on or before November 7, 2022.  (Doc. #20.)  Defendants filed the Report of Rule 26(f) Planning Meeting on November 7, 2022.  (Doc. #24.)  The following day, Plaintiff filed a motion to extend the time to file the Rule 26(f) report claiming that a medical condition prevented her from being able to complete the Report timely.  (Doc. #25.)

---

[1] 42 U.S.C. §1981 is the appropriate citation.

On November 15, 2022, the undersigned issued a Report and Recommendation on Defendants' motion to dismiss, granting in part and denying in part, the motion. (Doc. #26.) In the Report, the undersigned recommended that the motion to dismiss claims against Etech be denied, that the claims against Matthew Rocco under Title VII be dismissed and that Plaintiff be given 14 days after adoption of the Report and Recommendation to file an amended pleading to state a proper claim under 42 U.S.C. §1981 against Matthew Rocco.

On that same day, November 15, 2022, the parties appeared for their Rule 16 management conference. The conference was held in the courtroom and on the record. During the management conference, Plaintiff explained her difficulties in filing electronically and requested that her permission to file electronically be terminated. The court granted this request and issued an order vacating Plaintiff's request to file electronically and ordered that Plaintiff was to submit all future court filings by mail and serve Defendants by mail. (Doc. #28.)

During the management conference, the following relevant exchanges took place:

THE COURT: I do need to advise you that you're, of course, free to proceed pro se. You are still held to the same rules of court any attorney is held to. That includes the Federal Rules of Civil Procedure and the local rules, civil local rules for the Eastern District of Texas. And those can be found on the Eastern District of Texas website, both the federal civil rules and the local rules of this Court; okay?
          MS. MOLINA: Yes.
(Doc. #104 at 5.)

THE COURT: Okay. Oh, I do believe you also filed -- you filed a motion for an extension of time to comply with the initial disclosures and essentially to file the Joint Conference Report. But the Joint Conference Report is already filed, so you don't need an extension of time. You're not missing a deadline with respect to the Joint Conference Report. How much time do you need before you're able to provide the defendant with initial disclosures?
          MS. MOLINA: One week.
THE COURT: From today?
          MS. MOLINA: Uh-huh. Probably sooner, but one week.
THE COURT: So the 22nd, okay. I'm assuming the defendant is unopposed.
          MS. GAIGE: Unopposed, yes.

3

THE COURT: Yeah. So the Court will grant your motion for an extension to give the defendant initial disclosures no later than November 22nd.

(Doc. #104, at 42.)

THE COURT: With respect to your service issues, you have filed a motion requesting, and the Court granted a motion to allow you to use ECF. If you don't want to do that

MS. MOLINA: I tried to.

THE COURT: Yeah. If you don't want to do that, file a motion to cancel the ECF access and we'll do so. But once you're granted ECF access, the defendant is free to serve you that way. If you don't have ECF access, then defendant needs to serve you via mail. So you're going to kind of have to pick which one.

MS. MOLINA: Via mail because I did try twice already, and every time that I'm trying to upload it, it logs me out.

THE COURT: All right, then the Court will cancel the order allowing ECF filing, and you will file everything by mail. You will mail it to the Court, and you will mail it to the defendant. The defendant is free to contact you by email and by telephone. They can pick up the phone and call you. There's nothing that precludes them from doing so. Now, they are going to have to serve you by mail. That's fine.

MS. MOLINA: Okay, thank you.

(Doc. # 104 at 47-48.) Following the management conference, the court vacated the order allowing Plaintiff to file electronically (doc. #28) and entered an order giving Plaintiff until November 22, 2022 to complete her initial disclosures (doc. #29).

On December 9, 2022, the district court entered an order adopting the undersigned's Report and Recommendation on Defendants' first Motion to Dismiss. (Doc. #35.) Plaintiff filed her amended complaint on November 30, 2022. (Doc. #33.)

On April 4, 2023, the undersigned held a telephone conference with the parties to discuss the Defendants' Motion for Referral to Mediation. Relevant to the issues presented in this motion are the following portions of the hearing:

THE COURT: All right. So it appears, Ms. Molina, from the defendant's motion, though, that they've been trying to reach you to talk about this, so that perhaps this hearing would not have been necessary. It says they tried to email and call you on February 27th, February 6th, February 1st, and January 27th. Is there a reason you're not responding to counsel?

MS. MOLINA: I understand, and I apologize, but I thought like I would need some time to get a lawyer. The computer, I put a software in it because there

4

was something wrong and it expired, so I put another software, and it didn't work. And so then I had to like live without a computer for a while. And then I had intended to call you here, but –

THE COURT: You cannot continue to fail to respond to telephone calls from the Court or counsel. You are the plaintiff in this case. If you do not stay in contact with counsel and/or the Court, you run the risk of having your case dismissed for want of prosecution. So, when the Court calls you and leaves a message, you need to return that telephone call. When the Court sends you an email, you need to respond and say that you have received the email; all right? So we cannot continue down this road. You're wasting precious time in moving this case along by your failure to respond to the Court and counsel. Am I clear?

MS. MOLINA: Yes, and I also got sick. Yes.

(Doc. #105, at 4-5.)

THE COURT: All right. And before I do the referral order, Ms. Gaige, have you received disclosures from the plaintiff that outline her damages and a calculation of those damages, as required under Rule 26?

MS. GAIGE: We have not.

THE COURT: All right. So, Ms. Molina, I know you know this, that you have an obligation to respond to disclosures. And one of those disclosures requires you to outline for the defendant the categories of damages that you seek. And to the extent you seek economic damages that are able to be calculated, you need to provide that calculation and how you calculate it to the defendant. That will go a long way toward having a productive mediation if the defendant is aware of what you claim your damages are in this case. Is there anything that prevents you from doing that?

MS. MOLINA: No.

THE COURT: Okay.

MS. MOLINA: On the calculation of damages, would that be akin to a demand letter?

THE COURT: Well, you are certainly within your rights to send in a demand letter. You're under an obligation, under the discovery rules, to provide an answer to the Initial Disclosures. And one of those, I think it's Item 2, is a calculation of damages. So you have a duty under the Rules of Civil Procedure to provide that to them.

MS. MOLINA: Oh, yes.

THE COURT: I'm sure the defendant would take it in the form of a demand letter. But my point is, it would go a long way toward a productive mediation in this case if the defendant is aware of, going into mediation, sort of what the parameters of your claims are from a monetary perspective. Do you understand?

MS. MOLINA: Yes, I understand. And yes, I know to do that. I have already -- my computer is like a hybrid, but unfortunately -- but I know what you're talking about and I'm going to produce that.

THE COURT: Okay. When can you provide to the defendant a calculation of your damages, as required under Rule 26?

MS. MOLINA: And also, because of some of this, one of the things is because I had a new flash drive. That would have to happen before May 31st; right?

> THE COURT: Well, it should have happened a long time ago. When your Initial Disclosures were provided to the defendant, you were required at that point in time to provide a calculation of damages. Now, you're free to supplement that or amend that as time goes on if for some reason your damage calculations change, but you should have already provided it to them. What the Court wants to know is: When can you do that?
>
> MS. MOLINA: I'm sure by April 14th, if not sooner than that. I'll do it as fast as I can, but I would say by April 14th.
>
> THE COURT: Well, the Court is going to go ahead and enter an order requiring you to do that, since it should have been already done. Do you understand?
>
> MS. MOLINA: Yes, I understand.

(Doc. # 105, at 7-10.)

After the telephone hearing, the undersigned issued a written order directing Plaintiff to provide her computation of damages by April 14, 2023. (Doc. #54.) Plaintiff failed to comply.

On September 11, 2023, the court held a telephonic status conference requested by the Plaintiff to discuss a subpoena issued by Defendants to the Plaintiff's current contract employer and other discovery issues. During the hearing, it was brought to the undersigned's attention that Plaintiff still had not provided her calculation of damages as required under initial disclosures, that Plaintiff had not answered written discovery sent to her in June; and that Plaintiff had failed to appear for a September 7, 2023, deposition due to a medical condition occurring that morning. Plaintiff requested that the subpoena to her current employer for payroll information be quashed. The following relevant exchanges took place:

> THE COURT: Okay. So, if I understand your motion, a subpoena has been sent to DoorDash, who you currently work for on a contract basis; is that correct?
>
> MS. MOLINA: Un-huh.
>
> THE COURT: Is that a yes?
>
> MS. MOLINA: Yes.
>
> THE COURT: Have you provided the defendants with answers to disclosures that outline your damages in this case?
>
> MS. MOLINA: Can you repeat that question?
>
> THE COURT: Sure. In every federal lawsuit, each party is required under the law to exchange what we call initial disclosures. One of the initial disclosures that you should already have provided to the defendant includes an outline of your damages and I'm trying to find out if you have done that?
>
> MS. MOLINA: During the settlement?

THE COURT: No, it's part of discovery in any federal lawsuit.

MS. MOLINA: No.

THE COURT: Okay, so that's a problem because you are obligated, under the law, under the Rules of Civil Procedure, to identify for the defendant what damages you're claiming and what categories of damages you're claiming. And the reason I'm asking you that is because I'm wondering if you told the defendants that you were seeking back pay and front pay.

MS. MOLINA: I keep trying to disclose those damages to them.

THE COURT: Yes, and quite some time ago, to be honest. But that's not the reason I'm asking you that. It seems to me that how much money you have earned at DoorDash is relevant to your damages. So have you provided the defendants with documentation supporting your claim of damages?

MS. MOLINA: I believe [u/i] would be everything [u/i].

THE COURT: Have you given the defendants a copy of your 1099s from DoorDash?

MS. MOLINA: No.

THE COURT: Okay. Well, in the absence of you voluntarily providing documents to support your damages, I can't very well fault the defendant for attempting to get those documents some other way, which would include a subpoena to DoorDash. Ms. Gaige, are you on?

MS. GAIGE: Yes, Your Honor.

THE COURT: Is part of your discovery -- I assume you've sent written discovery requests to the plaintiff?

MS. GAIGE: Correct.

THE COURT: Okay. As part of those written discovery requests, did you ask the defendant for documents supporting her allegation of damages, back pay? Did you ask for you her to provide an authorization to obtain those documents? You know, we have a specific local rule on -- I think it's Local Rule 34 on the provision of authorizations to obtain employment records. Did you do any of that?

MS. GAIGE: Yes. Yes, we did serve those end of June.

THE COURT: All right. And you have not received a response?

MS. GAIGE: Correct.

THE COURT: Did you receive a request for an extension?

MS. GAIGE: We did not.

THE COURT: Okay. So, Ms. Molina, again, I can't –

MS. MOLINA: [U/i].

THE COURT: Go ahead.

MS. MOLINA: [U/i]. Does she have subpoenas that have requested things like my taxes, my driver's license and other documents that would have that information?

THE COURT: Well, so in a case where you're claiming monetary damages related to back pay and\or front pay, your tax returns would be a standard document that I would expect any defendant to ask for. Obviously, if it contains your Social Security number, I can't remember if we have a Protective Order in this case. But, you know, that sort of information could obviously be redacted or provided under

a Protective Order. But how much money you have earned since your employment ended at Etech is relevant to the issue of your damages.

    MS. MOLINA: I have assumed that's confidential. And I do have the 1099s of the income. I have been working --.

THE COURT: Well, I guess I don't understand, then, why you haven't provided it to them.

    MS. MOLINA: Because I didn't know.

THE COURT: Well, I can't help you there.

    MS. MOLINA: I can provide them.

(Doc. #106 at 12-16.)

THE COURT: Ms. Molina, it is not harassment.  It is not harassment for a party to engage in relevant discovery. It's just not. And so unless you can provide the defendants with the information they are looking for, the subpoena to DoorDash is fine. Now, if you had provided all of this documentation and they still subpoenaed DoorDash, then, you know, we might be talking about something different. But it doesn't sound like you have engaged in any discovery, and you are obligated to do so. So I cannot fault the defendants for serving a subpoena for documents that they are entitled to.

    MS. MOLINA: I can send the defendants the 1099s and [u/i].

THE COURT: Yeah, I can't understand that last part. I heard you say "I can" –

    MS. MOLINA: Send the defendants my earnings up until right now and [u/i].

THE COURT: Ms. Gaige, have you already served the subpoena on DoorDash?

    MS. GAIGE: Yes, it was served on September 5th.

THE COURT: September 5?

    MS. GAIGE: Yes.

THE COURT: Okay. Have you received a response from DoorDash, any, you know, acknowledgement from their Legal Department or –

    MS. GAIGE: No, none so far. The date of compliance, I believe, is like the 18th of September, but we haven't heard from anyone there yet.

THE COURT: Okay. Well, Ms. Molina, I'll leave it to you to discuss what documents you have that you can provide to the defendant, but I am not going to require then to pull their subpoena. I mean, there's just nothing wrong with what they've done….

(Doc. #106, at 17-18.)

THE COURT: Well, at this point, I mean, it's not the best use of the Court's time for me to mediate a conversation between you and defense counsel about what documents that you have in your possession. I suggest that after this call, that you have a conversation with Ms. Gaige about what documents you can provide to her. If that satisfies the documentation that she is looking for to determine back pay and front pay, then that sounds like it would resolve the subpoena issue. If you don't have the documentation in your possession or can't provide it to her immediately, then she has every right to pursue her subpoena and I'm not going to quash it. So, after this call with the Court, you should have a conversation with Ms. Gaige, not

only to talk about these documents about your back pay and front pay, but frankly when the defendants can expect long overdue answers to discovery.

MS. MOLINA: Well, I have explained that [u/i] days –

THE COURT: That's the discovery deadline. When the Court extended discovery deadlines, that doesn't include providing the parties' extensions to respond to valid written discovery. I mean, I'd have to go back in and look. Ms. Gaige, was discovery pending prior to the mediation and did we stay that?

MS. GAIGE: Your Honor, it was not stayed -- okay, I'm sorry, it was not stayed. I believe it was sent after the mediation, after we reached the impasse, yes, in late June. And then the answers were due before the [u/i] issues.

THE COURT: So I suspect they were due what, mid-July?

MS. GAIGE: Yes. And I think I actually sent one interrogatory June 16th, so that would have been due around July 15th or so. And then the second set was June 21st. I believe those responses would be 30 days after that, so about July 20th.

THE COURT: Yeah. And so I'm looking back at my orders. So we extended dispositive motion deadline. I gather we issued a separate scheduling order changing maybe it was the trial date because of mediation.  But, Ms. Molina, I don't believe I've issued any orders extending the time to answer discovery. But regardless, at this point discovery answers are due to the defendant. You understand that, yes?

MS. MOLINA: Yes, [u/i]. So I guess it depends on what question you asked her, and she responded.

THE COURT: I asked her whether or not I had previously signed any orders extending the deadline with which to respond to discovery, separate and apart from just extending the discovery deadline for the parties to complete discovery. And she was explaining to me that the discovery that she sent to you was sent after the failed mediation.

MS. MOLINA: Because I received the [u/i] dates here to respond.

THE COURT: So you had 30 days from when the discovery was served on you to answer it. That's under the rules. That's the Federal Rules of Civil Procedure of 30 days. So they're saying that discovery was served on you June -- maybe June 16th and then another set on June 21st.

MS. MOLINA: That was [u/i] 21st.

(Doc. #106, at 19-22.)

THE COURT: Ms. Molina, when are you available for your deposition?

MS. MOLINA: When -- I want to be clear when the date to respond to everything.

THE COURT: The date is past due. So there is no new date. Your discovery responses are way overdue. Your objections to those discovery responses are waived because you've waited too long. So you need to get your answers to discovery, whether it's written interrogatory answers -- I don't know what was served on you -- request for production, you need to get those answers to the defendant right away. There is no extension at this point. They're overdue.

MS. MOLINA: One quick question. What about me serving the discovery, because when you extended the discovery deadline, that was also [u/i] and I didn't understand –

THE COURT: So the deadline is October 31st and it says, "All discovery shall be commenced in time to be completed by this date." So, if you take a look at the Federal Rules of Civil Procedure, a party has 30 days, depending on how it's served, to respond to discovery. So you ought to be able to figure out with a calendar how far in advance of October 31st you need to serve discovery so that it is completed, in other words, that the defendants have provided answers and\or documents on or before October 31st.

MS. MOLINA: Okay. And one thing that I wanted to say is that my mail, I did not receive mail the entire month of July. They actually would hold my mail at the post office, unbeknownst to me. And I have [u/i] and nobody told me I need to go [u/i].

THE COURT: Do you have the discovery –

MS. MOLINA: And then –

THE COURT: Wait.

MS. MOLINA: No, ma'am. But then something else happened. [U/i].

THE COURT: Do you have the discovery that was served on you in June?

MS. MOLINA: Yes. Because I did not get anything in July.

THE COURT: You need to answer the discovery. I'm not sure what your problems are with the post office, but you need to answer the discovery. It's overdue. All right?

MS. MOLINA: Okay, and so –

THE COURT: So now we're going to talk about when you're going to make yourself available for your deposition…

(Doc. #106, at 24-26.)

THE COURT: Okay. Ms. Molina, September 19th is available or some date in the last week of September.

MS. MOLINA: For me –

THE COURT: For you to be deposed, for you to show up and be deposed by defendant's counsel in this case. Are you available September 19th?...

MS. MOLINA: It would be more convenient to me the last week of September. THE COURT: Okay. So what date in the last week of September are you available for your deposition?

MS. MOLINA: The 27th.

THE COURT: Ms. Gaige, does September 27th work for you?

MS. GAIGE: It does.

(Doc. #106, at 27.)

Despite the court's clear directions to the Plaintiff regarding her disclosures, discovery

responses and deposition, Plaintiff failed to send her disclosures, respond to discovery and did not

attend the deposition scheduled for September 27, 2023, claiming she overslept.[2] Instead, Plaintiff filed a Motion for Discovery Overreach and a Motion in Limine on September 27, 2023. (Docs. #84, #85.) In these motions, Plaintiff complained about certain discovery requests or subpoenas served by the Defendants. Plaintiff did not, however, include in her motions, copies of either the discovery requests or subpoenas at issue. Due to these deficiencies, on September 28, 2023, the undersigned ordered the Plaintiff to file copies of the discovery or subpoenas at issue. (Doc. #88.) The undersigned gave Plaintiff five days to comply, ordering the documents to be filed no later than October 2, 2023, and setting a hearing for October 13, 2023, on Plaintiff's motions.

Instead of complying with the court's order, on October 2, 2023, Plaintiff filed a motion for an extension of one week asserting a medical issue prevented her compliance and a motion to amend one of her previous motions. (Docs. #90, #91.) Given that Plaintiff had no issue in filing not one but two motions on the date she was supposed to file the exhibits, the undersigned denied the request for an extension and ordered Plaintiff to comply no later than October 4, 2023, by 5:00 p.m. Plaintiff filed her response on October 5, 2023. On October 6, 2023, Defendants filed this underlying motion to dismiss asserting that Plaintiff's claims should be dismissed due to her failure to engage in written discovery or attend her deposition. (Doc. #100.)

At the hearing on October 13, 2023, the undersigned ordered Plaintiff to fulfill her long over-due discovery obligations by October 20, 2023, and attend her deposition on October 31, 2023. Relevant to Defendants' motions to dismiss are the following exchanges from the hearing:

> THE COURT: So, as we sit here today, have you provided interrogatory answers or documents to the Defendants?
>     MS. MOLINA: No.
> THE COURT: So that actually came up in a telephone conference we had on September 11th of 2023. I told you at that time that your interrogatory answers --

---

[2] The deposition was scheduled for 10:00 a.m. in Lufkin. Plaintiff called Defense Counsel at 10:55 to report that she overslept and would be there in an hour. At 11:58, she had not arrived, and counsel took a certificate of non-appearance. (Doc. #139-3.) Apparently she arrived then at 12:15 p.m. but counsel had already left.

we've had this discussion -- that your interrogatory answers and your request for production answers were long overdue and that you had waived any objections to those discovery answers. And that you kept saying to me it's in here in the record, "What's my deadline?"  And what I told you was there is no more deadline. You owe to them right now. And so now it's been a month and you still have not provided them to them. So you've been warned, you were told to answer the interrogatories and Request For Production back on September 11th, yet you're here today still not having done so. So you can no longer ask for an extension.  The interrogatory answers are due. You have waived any objections you had to those interrogatory answers or Request for Production.  Do you understand?

     MS. MOLINA: Not really. I don't understand how can I have waived –

THE COURT: Because the Federal Rules of Civil Procedure required you to make objections, to the extent that you have any, within 30 days of receiving the discovery. It has been July, August, September, October. It's been four months. Yes, ma'am?

     MS. MOLINA: You shouldn't be counting July because for over a month, I'm saying at the end of June to the beginning of August, I got no mail. I got everything at once. It was held up at the post office because the -- nobody told me in the apartment complex that they were re-arranging the mailboxes.  And then when I went to the mailbox after I was told I would be getting a notice, I go to the mailbox and then the woman there told me that they had not [inaudible] my mail for that long.

THE COURT: That doesn't explain in any way, shape, or form why between September 11th, when I warned you that your discovery was way overdue, you still had not –

     MS. MOLINA: I'm trying to say I am not quite understanding exactly what you said, and that has nothing to do with the conference, because when I first got those documents and when I got [inaudible], that's when I started doing all these motions seeing how they were irrelevant to the case.

THE COURT: Well, those are some of the predicaments that come from representing yourself pro se. I can only tell you what the Court's ruling is.  I cannot make you understand it and I can't help the fact that you don't understand what I'm saying. Your answers to the interrogatories and the Request For Production are overdue and you must answer them. We're going to get to -- at the end of this, we're going to get to a time frame by which you need to do that; all right?

     MS. MOLINA: Well –

(Doc. #123 at 13-15.)

THE COURT: Okay, so the Court set a hearing to talk about your motions. So I'm here to listen to you about your motions, in particular No. 97. So do you have anything to offer to me about Document No. 97?

     MS. MOLINA: The motion with this duces tecum.

THE COURT: Yes.

     MS. MOLINA: That motion includes a lot of information that I believe is protected by privacy and also irrelevant.

THE COURT: Okay.

MS. MOLINA: I just wanted to say that I am sure Your Honor finds anything that's at all negative on anything on myself, because I'm sure that's going to be the case. But I'm sure, as well, that it is very prejudicial the fact that that whole thing is operating.  And finally, I just wanted to ask you exactly or maybe you can tell me exactly that what is my role in discovery?

THE COURT: So each party's role in discovery is to serve and answer questions and provide documents related to the lawsuit. So your role, when discovery is served on you, is to answer that discovery. If you have objections to it, then you need to raise those objections. Your role as the Plaintiff, to the extent that you want discovery from the Defendants, was to serve discovery on them. That's the role of the parties. And it's all outlined in the Federal Rules of Civil Procedure, which, when we met for the Rule 16 Management Conference in November of 2022, I identified to you where you could find the Federal Rules of Civil Procedure because you were proceeding pro se. And I advised you that you had every right to proceed pro se, but that you needed to be familiar with and understand the Federal Rules of Civil Procedure because you would be held to them despite the fact that you are not a trained attorney. So your obligations for discovery are contained within the Federal Rules of Civil Procedure. All right, yes?

MS. MOLINA: Am I able to, you know, do interrogatories still to ask questions particular to the case?

THE COURT: So we're going to get to that at the end. So the Exhibit A to the deposition notice is a subpoena duces tecum, Item No. 1, documents which reflect any income, compensation, or earnings you have received from June 20, 2019 to the present. All right, any objection you have to that request is overruled. Those documents are relevant to your case and the Defendants are entitled to them. We had –

MS. MOLINA: They're irrelevant.

THE COURT: I'm sorry? Because I do believe, ma'am, you are requesting both back pay and front pay in this case, are you not?

MS. MOLINA: I'm requesting back pay and [inaudible].

THE COURT: All right. So, to the extent that you are asking the Court to award you damages for income that you may or may not have earned because you were terminated from your employment, the Defendants are entitled to discovery on that issue. They are also entitled to discovery on your efforts to mediate your damages, meaning what other moneys have you earned since you left Etech. They are entitled to discovery on that. It's highly relevant in a Title 7 case. So that's why.

MS. MOLINA: I think -- I feel like my motions that I have handed to you about this not being -- I'm going to -- because I'm a little bit confused here because I've read, based on other cases, an inability to calculate back pay and the calculation of damages.  And it's not quite matching because it's saying that a lot of things that are, you know, that are requested are not, you know, supported by precedent and law.

THE COURT: Okay.

MS. MOLINA: And they tend to over-request information that has not been -- but with, for example, you know, [inaudible]. That's why, in everything that I've read, where it says what I understood to say that certain things or not everything

that you earned afterwards is supposed to be included in your calculations of back pay. And that's what they were requesting.

THE COURT: So there's a distinction between what is going to be considered by the Court at the time of trial as evidence and the things that need to be exchanged in discovery; right? Not everything that gets exchanged in discovery is necessarily going to be admitted into evidence at trial. This is just the discovery stage. Documents which reflect your income, compensation, or earnings that you have received from June 20, 2019 to the present is relevant, and you must produce it. So any objection to Document, duces tecum No. 1, is overruled. Number 2. Documents, materials, and electronic files that refer to, relate to any evidence of any communications between you and the Defendant during your employment, that's also relevant. Yes, ma'am?

MS. MOLINA: Do you, for that situation, need -- like do you have a website where like the Plaintiff can upload to the voice website. Do you need to verify the voice?

THE COURT: None of this stuff is going to be provided to the Court. These are things that you need to bring with you to your deposition to be provided to the Defendant. If you have information in an electronic file, you need to talk to counsel for the Defendant about what's the best way to bring that, bring it on a thumb drive, bring it on a floppy disk.  That's between you and the Defendant. You don't serve any of this on the Court. You don't serve discovery answers on the Court. Yes, ma'am?

MS. MOLINA: I saw that when Defendants or Plaintiffs wanted to introduce certain electronic data, they are able to, I guess, in some courts use the website.

THE COURT: So you're not providing this Court with discovery answers. You do not file discovery with the Court. When you get to trial and you're presenting evidence, if that evidence is in electronic format, you need to talk to the Clerk's Office to figure out how to present that.  But that's not what we're talking about here. We're talking about you bringing to your deposition the documents identified in Numbers 1 through 10. You do not serve it on the Court. Do you understand that?

MS. MOLINA: Do not what, again?

THE COURT: You don't bring it to the clerk's office, you don't hand it to the clerk's office, you don't file it with the clerk's office. Discovery goes to the Defendant. Is there anything unclear about that?

MS. MOLINA: No.

(Doc. #123, at 20-25.)

THE COURT: No. 10, all documents which support or contradict your claims in this lawsuit.  You provided Initial Disclosures to the Defendant back on -- it's probably not dated -- 12/20 of '22. In that Initial Disclosures you identified a number of documents, starting with the Etech Handbook, the W-2 from 2019, some 1099s from 2019, 2020, 2021, and a whole host of other documents. You must bring those to your deposition, each and every one of them. Do you understand?

MS. MOLINA: Yes.

THE COURT: Is there anything unclear about that?

MS. MOLINA: No….

THE COURT: So No. 1 is separate from No. 10. No. 1 asking about document which reflect income, compensation, or earnings that you've received from June 20, 2019 to present, you have to bring all that. That includes your tax returns. You are going to be required to bring your tax returns. Do you understand that? You don't have to raise your hand. It's a simple question. Do you understand that?

MS. MOLINA: I understand and I will bring them, but there is precedence.

THE COURT: No, I've read your cases. Your cases are not --

MS. MOLINA: How will the tax returns –

THE COURT: Because they show your income since 2019, including any income that you have earned since you left Etech, which goes to the issue of mitigation of damages. The tax returns are relevant. They are relevant in Title 7 cases. The case law that you cited to me is, A, not from this district; B, is old; and C, has nothing to do with Title 7 cases. Nothing. I've read each and every one of them. They have to do with malpractice cases. They have to do with business loan cases. They are not Title 7 cases. Income tax returns are highly sensitive documents, but tax returns, are they relevant to the litigation? And if so, the information, can it be obtained from any other source. Those are the two things that I am supposed to consider. The Eastern District of Texas, which is where you are, held in 2020 that tax return information is relevant when a Plaintiff has placed the subject of his employment and income at issue in this litigation, which is what you have done.  "The information contained in a tax return is relevant to the Plaintiff's claims for front and back pay and to the extent to which he has mitigated his damages by obtaining other employment." That is Lozada-Leoni vs. Moneygram International, 2020 Westlaw 10046089.

MS. MOLINA: And that is the only federal law -- or precedent, sorry, about the tax returns?

THE COURT: Then there's Williams vs. United States Environmental Services, which is 2016 Westlaw 684607 from the Middle District of Louisiana, which is also in the Fifth Circuit. "Because Plaintiff is seeking compensatory damages for lost and unpaid wages, her tax returns are relevant to the litigation. Numerous courts have recognized that tax return information is relevant where a Plaintiff has placed the subject of his income earning capacity at issue in the litigation." So you will bring your tax returns for 2019, for 2020, 2021, and 2022, to the extent you have completed them, as well as all of the other documents that you identified in your Initial Disclosures. All right. So that –

MS. MOLINA: I would like to –

THE COURT: Go ahead.

MS. MOLINA: I will comply with you're saying. But I'm also asking if I continue investigating that because I read, the reason –

THE COURT: No.

MS. MOLINA: -- is because I read that in federal law, precedents are saying that, you know, --

THE COURT: Here's why.

MS. MOLINA: For Title 7, it is –

THE COURT: Ms. Molina, you filed a motion. This Court set a hearing. We are all here today to hear your argument. I am not going to entertain other briefing. I've read the cases that you've already cited to me, none of which are relevant to this issue. I've done my own research. It is very clear to me that your tax returns are relevant; all right? So we're done with that issue.

MS. MOLINA: Okay.

(Doc. #123, at 43-47.)

THE COURT: All right. Initial disclosures. One of the things I wanted to talk about here that was included in the Notice of Hearing is why the Plaintiff, after having been told twice on the record and once in a direct order, why the Plaintiff has not answered the Initial Disclosures with respect to the computation of her damages.

MS. MOLINA: I sent a letter today, but it has to be -- that includes a computation of damages, but in a rough draft. And –

THE COURT: My question is: Why haven't you done it before now? Why are you purposefully disobeying a Court Order to answer and provide a computation of your damages?

MS. MOLINA: I did it, but I've also had issues with -- I had Windows 8.1 and then to put it to Windows 10. And so it was -- so I need to do it again.

THE COURT: When did that occur? When did your problem with your computer arise?

MS. MOLINA: About I think March of this year.

THE COURT: All right, is there a reason you didn't provide the initial disclosure, the computation of damages, when you were required to under the rules? Is there a reason why you couldn't handwrite it and send it to the Defendant?

MS. MOLINA: Like when did I have to -- I mean, because I've been trying to understand –

THE COURT: Right, because we've been over this three times….

(Doc. #123, at 55-56.)

MS. MOLINA: I have been with the discovery and the documents –

THE COURT: All right, that's not an excuse. All right. So the Defendants have moved to dismiss your case because you have failed to properly prosecute this case. I agree with the Defendants that you have failed -- wholly failed to engage in discovery. The record is full of warnings to you. At the Rule l6 Conference back on November 15th of 2022, I reminded you directly that you were required to file your Initial Disclosures no later than October 31st of 2022. I think we amended that date -- no. Yes, we amended that date to December 20th of 2022. You provided your Initial Disclosures on December 20th of 2022, but you wholly failed to provide any calculation of damages. The docket reflects that -- well, I guess the original deadline was October 31st of 2022. It was then extended to November 22nd of 2022. The docket reflects that at 4:35 in the afternoon, on November 22nd of 2022, that you contacted the clerk to advise that you would not make your Initial Disclosures by the deadline. The docket reflects, on November 29th of 2022, one week after your Initial Disclosures were due, that you actually filed your Initial Disclosures with the Court, which was not appropriate, because you don't file Initial

16

Disclosures with the Court. So we entered Docket No. 34 striking the Initial Disclosures and ordering that you file the required notice. The Initial Disclosures notice was then filed on December 20th of 2022, but contained no computation of damages. I just went through the telephone hearing we had on April 4th of 2023, which was on the Defendant's Motion for Referral of this case to mediation. I just went through the transcript entries where you were specifically ordered and understood your obligation to provide your calculation of damages no later than April 2nd -- April 4th of 2023. The Court issued Docket No. 54, which ordered the Plaintiff to provide her damage calculations no later than April 4th of 2023. As we sit here today, the Plaintiff stands in violation of that Court Order. You have wholly failed to comply with that Court Order. You have wholly failed to engage in discovery. You have engaged in repeated failures to answer your discovery. You have failed twice to show up for your deposition. Instead, you have excuse after excuse. You can speak when I'm done. You have excuse after excuse for your inability to prosecute this case. I am inclined to grant the Defendant's Motion to Dismiss. However, I must assess two things before I do that: Number one, besides dismissal, is there a lesser sanction that I could impose on you for wholly failing to engage in discovery that would cure the prejudice to the Defendant. I must also concern myself with whether or not you have been provided with fair notice that you are facing dismissal. Now, as terms of lesser sanction, I could award the Defendant attorney's fees for your failure to appear at your deposition, but I'm going to hold that issue in abeyance until we determine whether or not you are going to engage in discovery. Ms. Gaige, what is your hourly rate?

MS. GAIGE: This matter, I believe it is approximately $590 an hour.

THE COURT: All right. How many hours did you spend on September 27th, traveling to Lufkin, waiting for the Plaintiff, and traveling back?

MS. GAIGE: Four hours of travel, roughly, with two hours of wait time, so six hours total.

THE COURT: Six hours total, all right. So, if the Court determines that a lesser sanction is necessary, I'll have the requisite information to determine what the prejudice was to the Defendant for your failure to show up for your last deposition. All right. As to the notice issue, this is your notice, because I am concerned that the Court's previous orders, for whatever reason, seem to be unclear to you about what's going to happen if you fail to engage in discovery: Ms. Molina, if you fail to meet any of the deadlines that I have just outlined, if you fail by October 20th to provide the answers to the interrogatories and the documents that are responsive to the request for production, then you will face dismissal of this case. If your answers to discovery contain any objections, that will be a violation of this Court Order. You have waived all of your objections to their discovery. If you fail to file a notice that you had served your discovery responses at the time that they're due, you will be in violation of the Court Order. If you fail to appear for your deposition for whatever reason, I am going to recommend to Judge Truncale to dismiss your case for want of prosecution under Rule 41(b) and for discovery violations under Rule 37(d). Is there anything that is unclear to you about this Court's finding?

MS. MOLINA: Three things. With respect to the decision, I think it's unfair that I am being -- you know, being responsible, because the first deposition was canceled –

THE COURT: But I already talked about the first or the second. There is no question that the Defendant took down their deposition notice for 1 and 2.  That's not an issue. But the third notice, the third scheduled deposition, you had a headache that morning.

MS. MOLINA: I had a migraine and I told them hours -- because she could have canceled the whole thing, because even before I started driving -- and the migraine got worse during the driving, which I let her know. So, if she could have picked up the phone, that would have been prevented.

THE COURT: There is not excuse, none, for your failure to appear for the last deposition.

MS. MOLINA: Well, and I didn't know –

THE COURT: No, no, no, no, you're not listening to me. For the last deposition, there is no -- I don't want to hear about alarm clocks, I don't want to hear the fact that they didn't wait an extra –

(Doc. #123, at 59-65.)

THE COURT: All right. Your Initial Disclosures, your computations of damages, you are going to calculate your damages and you are going to provide that to the Defendant no later than October 20th. That's next Friday. If you fail to do that, then I am going to recommend to Judge Truncale that he not allow you to put on evidence of your economic damages. Do you understand that?

MS. MOLINA: Yes. I've got a comment on the damages because when I completed the Initial Disclosures, I remember on the bottom of it, it had something on –

THE COURT: It is not a proper calculation.

MS. MOLINA: It wasn't a proper, but it had something there. And then also when I went with Magistrate Judge Hawthorn, I did include the damages there. But I didn't realize, as a pro se plaintiff, that what was -- I mean, the documents I sent to Judge Hawthorn were not necessarily going to be seen by a court. But I did put some damages and I have them here.

THE COURT: There is no good excuse, there is no good excuse for why you have not provided that to the Defendant prior to today. There is none. If you had it for Judge Hawthorn, there is absolutely no reason why you couldn't have given it to the Defendant in discovery answers. There is no good excuse, none…

(Doc. #123, at 65-66.)

THE COURT: Did you write down what discovery you owe the Defendant and what dates you owe?

MS. MOLINA: No, I will rely on the court transcripts.

THE COURT: You are not going to have time to get a transcript, get it transcribed -- that takes days -- and still be able to meet your discovery obligations. Do you have a pen?

MS. MOLINA: No.

THE COURT: Can somebody give her a pen? You have a piece of paper, you have the back side of your notes; all right. Interrogatories are due, emailed and postmarked, October 20th. Documents that are responsive to requests for production are due, postmarked and in the mail, by October 20th. I'm not going to require you to email them to them. Your initial disclosure computation of damages, due to the defendant by October 20th, by email and postmarked the same day. The authorization for your Social Security records is to be signed and placed in the mail to the Defendant no later than October 20th. You must appear for your deposition on October 31st at 1:00 o'clock in the afternoon at Lufkin -- Ms. Gaige?

    MS. GAIGE: Lufkin Space.

THE COURT: -- at Lufkin Space here in Lufkin, Texas. I'm not missing anything, am I, Ms. Gaige?

    MS. MOLINA: Oh, my tax return.

THE COURT: Oh, and your tax return. Well, I believe, are responsive to an RFP; is that right, Ms. Gaige? Or is that a duces tecum item?

    MS. GAIGE: Both.

THE COURT: Okay. So, Ms. Gaige, if she provides the documents on October 20th, I don't think she also needs to bring them to her deposition; right? They'll have a copy of them?

    MS. GAIGE: Correct.

THE COURT: Okay. Did you get all that down, including the dates of everything?

    MS. MOLINA: Yes.

(Doc. #123, at 84-86.)

Following the hearing, the court entered a specific order containing the following:

Plaintiff shall no later than October 20, 2023, provide the following to the Defendants' counsel:

- Full and complete responses to Defendants' First Set of Interrogatories dated June 16, 2023 (hearing Ex. 1). Said interrogatory answers shall be both emailed to Defendants' counsel and sent by regular mail, post-marked no later than October 20, 2023;

- Full and complete responses to Defendant's First Set of Request for Production dated June 21, 2023 (hearing Ex. 2). Said responses and responsive documents shall be sent regular mail, post-marked no later than October 20, 2023. Documents will include Plaintiff's tax returns for 2019 to the present, documents in her possession, custody or control requested in the request for production and all documents identified in her Initial Disclosures;

- An executed authorization to obtain social security records (SSA-3288), previously mailed to Plaintiff on June 21, 2023 (hearing Ex. 3);

- Plaintiff's computation of damages as required under Rule 26 and as required by the court's April 4, 2023, order (doc. 54).

(Doc. #109.)  Plaintiff was also ordered to bring to the deposition all documents in her possession, custody or control that are responsive to duces tecum numbers 1-2 and 7 -10, but if a document was responsive to both Defendants' requests for production and Defendants' duces tecum request, the Plaintiff did not need to bring an additional copy of the document to the deposition so long as the document is produced by October 20, 2023.  (*Id.*)

The undersigned also stayed the Defendant's motion to dismiss and determined that no response was due from the Plaintiff at that time.  Both at the hearing and in the subsequent order, Plaintiff was advised that failure to provide discovery responses, documents, and damage computations, by the deadlines, could result in sanctions, including, not limited to dismissal of her claims for want of prosecution under FED. R. CIV. P. 41(b) and/or for discovery abuse under Rule 37.  Defendants were ordered to advise the court no later than November 6, 2023, whether the Plaintiff answered discovery, provided documents and disclosures, and attended her deposition. (Doc. #109.)

As the deadline for Plaintiff to provide her discovery responses approached, she sought a continuance.  (Doc. #110.)  According to Plaintiff, a leak in her bathroom was preventing her from complying.  Said motion was denied.  (Doc. # 112.)  Three days later, Plaintiff still had not sent her discovery responses to Defendant allegedly due to email issues and the loss of her wallet. Plaintiff was ordered to bring her interrogatory answers, documents responsive to the requests for production and duces tecum, and her damage calculations to her deposition scheduled for October 31, 2023.  (Doc. #119.)  Defendant re-urged their motion to dismiss on October 24, 2023.  (Doc. #117.)

After the date for Plaintiff's deposition passed, the court requested a joint status report regarding discovery.  (Doc. #127.)  Said report was filed on November 16, 2023, and outlined

continued deficiencies in Plaintiff's discovery.  According to the report, Plaintiff did sit for her deposition on October 31, 2023.  She did not bring her tax returns.  She did not bring the recorded phone calls.  Much of the written discovery remains unanswered, Defendants having received mostly objections.  Upon receipt of the status report, the undersigned ordered the Plaintiff to file a response to the Defendant's motion to dismiss by December 15, 2023.  (Doc. #134.)

Thereafter, Plaintiff continued to object to the production of her tax and education records filing a motion objecting to their production on November 22, 2023.  (Docs. #133, #135.)

On December 20, 2023, Plaintiff filed a late response to the motion to dismiss.  (Doc. #137.)  Defendants filed a reply.  (Doc. # 139.)  Plaintiff then filed an opposition to Defendants' Reply.  (Doc. #142.)

## II.    Legal Standard

Defendants seek dismissal for want of prosecution under FED. R. CIV. P. 41(b).  If a party fails to diligently prosecute her case, the court may dismiss under Rule 41(b).  Dismissal, however, is a harsh sanction and should only be used in cases where there is a clear record of delay or contemptuous conduct.  *Griggs v. S.G.E. Mgmt.*, L.L.C. 905 F.3d 835, 844 (5th Cir. 2018).  Before granting dismissal under 41(b) with prejudice[3] the court must address aggravating factors including, (1) the extent of the plaintiff's personal responsibility for the conduct (2) the degree of actual prejudice to the defendant (3) whether the delay was the result of intentional conduct.  *Gates v. Strain*, 885 F.3d 874, 883 (5th Cir. 2018).  The court must also consider whether a lesser sanction would better serve the interests of justice.  *Id.*

---

[3] Dismissal here, even without the designation of "with prejudice" would effectively be with prejudice as the statute of limitations will have run.

### III. Analysis

A. Plaintiff's arguments in response.

As set forth above, the court directed the Plaintiff to file a response so that she could explain why her case should not be dismissed for her repeated failure to comply with her discovery obligations and orders of this court. Plaintiff's objections to dismissal are as follows:

- Plaintiff has completely served responses to interrogatories, and request for production;

- Only Plaintiff has been admonished for failing to comply with discovery deadlines;

- The court has not allowed Plaintiff to serve discovery;

- Plaintiff did not receive any mail form the USPS from the last week of June to the first week of August and asks the undersigned to call the USPS to verify this information although the postal employees refuse to sign affidavit attesting to such;

- Plaintiff did not know she was supposed to provide damage calculations but did provide it to the magistrate judge who mediated the case in May 2023;

- Defendants did not tell her that they did not receive her answers in the summer of 2023;

- Plaintiff missed her deposition on September 27, 2023, due to a migraine;

- Plaintiff overslept the morning of her deposition on September 27, 2023, and when she arrived at the deposition location more than two hours late, Defense counsel had already left;[4]

- Plaintiff believes she is being treated unfairly because no one told her that she could send discovery before deposing the defendant; and

- Plaintiff has not sent any discovery because the undersigned ordered her on October 13, 2023, not to serve discovery on the defendant until she had complied with her discovery obligations.

---

[4] Plaintiff asserts that it is unfair that counsel left at noon after waiting two hours, when Plaintiff arrived at 12:15.

(Doc. #137.) The balance of Plaintiff's 24-page response—pages 11 to 24—are a description of her claims and yet another argument about why her tax and school records are irrelevant. (*Id.*)

    B. <u>Application of the law.</u>

      1. Record of Intentional Delay

Before the court is a record of delay and contemptuous conduct by the Plaintiff regarding her discovery obligations. As Plaintiff is *pro se*, she is personally responsible for the delay and her conduct. Virtually at every turn, the court has had to remind, cajole and/or admonish the Plaintiff to provide her discovery responses beginning with initial disclosures containing the required calculation of damages. Plaintiff was advised at the Rule 16 management conference that she was obligated to provide them. The court issued a specific written order regarding the disclosures with damage calculations on April 4, 2023, oral orders on November 15, 2022, April 4, 2023, and September 11, 2023, and another written order on October 17, 2023. Plaintiff's current claim that she did not know she had to provide damage calculations as part of Initial Disclosure is belied by the record. Moreover, if, as she claims, she gave the damage calculations to the magistrate judge at mediation in May, 2023, one cannot fathom why it was not possible to provide them to the Defendants when the court directed her to do so on September 11, 2023. Indeed, the only plausible explanation is willful disregard of the court's orders and admonishments.

Plaintiff is correct that she is the only party who has been admonished for late or non-existent discovery answers. This is because at the time of the October 13, 2023, hearing, although free to engage in discovery since October, 2022 (the date to complete the Rule 26(f) conference) Plaintiff had yet to request a single piece of written discovery or deposition from the Defendants. Plaintiff blames others for this failure, asserting that no one instructed her on how to conduct

discovery, as though it was the obligation of either the court or defense counsel to do so. It is not. *Thunderhorse v. Lynaugh*, 38 F.3d 570 (5th Cir. 1984). This court did advise Plaintiff, at the Rule 16 conference, that she would be bound by the rules of civil procedure despite her pro se status and even directed to where to find the Rules of Civil Procedure and Local Rules of the Court. Plaintiff either failed to review the rules or did so and ignored them. In either event, this is willful behavior.

Plaintiff's assertion that the lack of mail prevented her from responding to the discovery requests is a timely manner is not well-taken. First, the first interrogatory was sent to her on June 16, 2023, and she claims her mail issues began in the last week of June. Second, the certificates of service on the discovery explain that the discovery was sent both by mail and email. Third, Plaintiff has provided no plausible explanation as to why she didn't immediately contact defense counsel to explain her problems with responding timely when she allegedly received the discovery in August. Fourth, she also has no explanation why she didn't respond to the discovery after the September 11, 2023, hearing when the undersigned directed her to do so. Finally, if the failure to respond to the discovery timely was the only example of intentional delay in this case, the undersigned might accept Plaintiff's excuse at face value. It is not. Instead, Plaintiff's delay in responding to the written discovery comports with the rest of her behavior regarding all other aspects of discovery in this case such as disclosures and depositions.

Despite having been told that she had waived all her objections by failing to respond to the discovery and being ordered her to answer the interrogatories and requests for production completely, Plaintiff, in direct violation of the court's order served objections to Interrogatories 1, 5, and 7-14. She provided answers only to nos. 2, 3, 4 and 6. Plaintiff objected to request for production nos. 1–6, 8-10, 12-14, and 16. What, if any, responsive documents Plaintiff has

provided to Defendant, the undersigned cannot tell from the record before it, except the undersigned is aware the Plaintiff has refused to produce her tax returns from 2019 to present, despite a direct court order to do so and she has refused to sign an educational records authorization.[5]

Plaintiff was ordered to bring her tax returns to her deposition.  (Doc. #119.)  She did not.  She was also ordered to produce her educational records.  (Doc. #128.)  To the extent she did not have access to the tax returns or educational documents, she was ordered to execute authorizations for Defendants to obtain them.  (*Id.*)  She has refused to execute the authorizations.  Instead, she maintains that the tax returns (and educational documents) are not relevant to her claims of back pay, front pay or compensatory damages in this Title VII case despite this court's repeated overruling of these objections.

As has been explained numerous times to the Plaintiff, when a plaintiff seeks compensatory damages for lost and unpaid wages, tax returns are relevant.  *Lozada-Leoni v. MoneyGram Int'l, Inc.*, No. 4:20-CV-68-RWS-CMC, 2020 WL 10046089, at *17 (E.D. Tex. July 8, 2020) (collecting cases); *Williams v. U.S. Env't Servs., L.L.C.*, Civ. Action No. 15-168-RLB, 2016 WL 684607, at *2, (M.D. La. Feb. 18, 2016).  While the documents are considered sensitive, the burden is on the plaintiff to establish that the information sought—regarding her earning since Defendants terminated her employment—is available from another source.  Plaintiff produced only 1099s from contract employer, which is not sufficient to show the full extent of her income since leaving Defendant's employ.[6]

---

[5] At the October 13, 2023, hearing Plaintiff claimed she did not have access to her educational records.  She confirmed that Defendants had sent an authorization as allowed under the local rules.
[6] Plaintiff maintains that she has had no other employers, but Defendants are entitled to verify the veracity of that statement.

Regarding her educational records, Plaintiff claims that she could not complete her degree because she was terminated from Etech and that her termination ended her eligibility for tuition reimbursement.  Indeed she states that she intended to apply for tuition reimbursement from Defendant if she had been employed.  She also claims that had she completed her degree she would be earning money as a computer programmer, database architect, computer systems analyst, information security analyst, computer network architect, or computer and information systems manager.  Despite these claims, Plaintiff has not produced any documents to support these claims. During the hearing on October 13, 2023, she stated she did not have the documents necessary to show the cost of tuition or documents to show she was on track to graduate but for her firing by Etech.  When provided with an authorization by which the Defendants could obtain those documents from her university, she objected to signing any such authorization.  After the hearing and in response to the motion to dismiss, Plaintiff filed a document from the university identifying what her declared major was in the spring of 2019 and what her GPA was at the completion of her last semester.  It does not indicate when she withdrew from school, why she withdrew from school or whether she completed the spring semester before she was terminated by Etech in June, 2019.[7] Again, these records could be obtained by the Plaintiff herself from the university or she could have signed Defendant's authorization.  She chose to do neither although she is the Plaintiff in this case and bears the burden of proof.

Finally, with respect to Plaintiff's damage calculation, Plaintiff provided her disclosures with damage calculations on October 24, 2023, four days past the last, required deadline.  In her damage calculations,[8] in the first paragraph she claims she is not seeking back pay or front pay,

---

[7] She did admit during the hearing on October 13, 2023, that she failed to pay in full for the spring 2019 semester, which could mean she failed to complete the semester.

[8] The undersigned ordered each party to provide the court with a copy of the Plaintiff's disclosures with damage calculations that Plaintiff was ordered to provide to Defendant by October 20, 2022.  (Doc. #145.)  Defendants

but then in the next paragraph asserts that she calculates her monthly lost wages to be from 2019 to 2023.  (Doc. #152-1.)  She provides no accounting for any income she earned during that period. To date, Plaintiff has not produced documents by which a reasonable person could ascertain her calculation of economic damages including calculations of back pay, front pay, loss of tuition benefits or loss of earning capacity.

The record of delay and contemptuous conduct is evident and is wholly a result of Plaintiff's intentional conduct.

### 2.  Prejudice to Defendants

Regarding the prejudice to the defendant, the record is also clear.  Defendants have not been provided any discovery by which it may test the validity of Plaintiff's claims for damages as Plaintiff's claims are supported only by her statements that "thus is so."  Other than a handful of 1099s, Defendants do not have tax returns or other documents to support Plaintiff's claims for back pay, front pay, loss of tuition benefits or loss of earning capacity.

Regarding the repeated attempts to obtain valid discovery answers, Defendants have had to pay their attorneys to attend hearings, respond to motions, show up for scheduled depositions only to have Plaintiff fail to appear.  Finally, when Plaintiff did appear for her deposition, her answers were argumentative and less than forthcoming and she failed to bring ordered documents or recorded phone calls to the deposition, despite the undersigned's explicit order.  In sum, Defendants have suffered prejudice.

---

provided a copy of what was sent to them post-marked October 24, 2023.  (Doc. #152-1.)  Plaintiff provided a 51-page filing of which exhibit 2 purports to be the disclosures with damage calculation sent to Defendant October 20, 2023.  (Doc. #153.)  Exhibit 2 does not match the document received by Defendant.  and Plaintiff each provided the document, but they do not match.

3.  Appropriate Sanction

Despite Plaintiff's last-minute efforts to meet her discovery obligations, Plaintiff is still in violation of the court's order and discovery obligations as follows:

- Fully answer, without objection, all interrogatories;

- Provide tax returns or other documents to support her claims of economic damages or execute a tax return authorization, and

- Provide education records or sign an authorization to obtain them.

The undersigned must now make a recommendation about the appropriate sanction in this case. Sanctions could include the ultimate sanction of dismissal, a less severe but certainly harsh striking of certain evidence, an award of attorneys' fees for the costs incurred by Defendants, or a light sanction such as an admonishment by the court.

The Plaintiff has proven herself to be beyond the admonishments of the court.  Plaintiff is not proceeding *in forma pauperis*, so monetary sanctions are conceivably appropriate, but as Plaintiff has repeatedly advised that she has no money, such a sanction would be ineffective.

This leaves the undersigned with the ultimate sanction of dismissal or a lesser sanction that addresses the gravity of Plaintiff's behavior, cures the prejudice to the Defendants yet preserves the Plaintiff's right to have her case decided on the merits.  As contemptuous as Plaintiff's behavior has been, the undersigned is not prepared to recommend dismissal.  Cases should be decided on their merits except in the rarest of circumstances.  The undersigned is convinced; however, that the Defendant should not have to proceed to trial on claims for economic damages where the opposing party has repeatedly refused to provide discovery relevant to the issues such as back pay, front pay, loss of tuition benefits or inability to complete her degree, and loss of earning capacity. Therefore, it is the recommendation of the undersigned that as a sanction for the delay and contemptuous behavior of the Plaintiff in connection with her discovery obligations that she be

prevented from presenting evidence at trial of any claim for back pay, front pay, loss of tuition benefits, or loss of earning capacity. Instead, Plaintiff's damages at trial should be limited to compensatory damages of past and future pain and suffering, inconvenience, mental anguish and loss of enjoyment of life as well as punitive damages if plaintiff should prove herself entitled to such damages. Such a recommendation allows this case to proceed and be decided on the merits but protects the Defendants from Plaintiff's repeated failures to provide proper damages calculations and discovery to support such calculations.

## IV.    Recommendation

The undersigned hereby recommends that the Defendants' Motion to Dismiss be **DENIED** in part and **GRANTED** in part. Defendants' request for a full dismissal with prejudice should be **DENIED**. However, the Motion should be **GRANTED** to the extent that the court should dismiss Plaintiff's requests for back pay, front pay, loss of tuition benefits or loss of earning capacity and that Plaintiff's compensatory damages at trial be limited to past and future emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life and other non-pecuniary losses and punitive damages should she show herself entitled to such.

Once this Report and Recommendation is considered by the district court, if the court does not reject the Report and Recommendation and, instead, decide to dismiss the Plaintiff's case, a new scheduling order should be issued.

## V.    Objections

Within fourteen (14) days after service of the magistrate judge's report, any party must serve and file specific written objections to the findings and recommendations of the magistrate judge. 28 U.S.C. § 636(b)(1)(C). To be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the

place in the magistrate judge's report and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.  Without leave of court, objections are limited to **eight (8) pages**. E.D. TEX. LOC. R. CV-72(c).

Failure to file specific, written objections will bar the party from appealing the unobjected-to factual findings and legal conclusions of the magistrate judge that are accepted by the district court, except upon grounds of plain error, provided that the party has been served with notice that such consequences will result from a failure to object.  *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*; 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

**SIGNED this the 15th day of February, 2024.**

_____
Christine L Stetson
UNITED STATES MAGISTRATE JUDGE